**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

BRIDGEVIEW BANK GROUP,           )
                                 )
        Plaintiff,             )
                                 )
        v.                     )     No. 10 C 8156
                                 )
STEWART TITLE GUARANTY CO. and   )
STEWART TITLE OF ILL. INC., d/b/a )
STEWART TITLE OF ILL.,           )
                                 )
        Defendants.            )


**MEMORANDUM OPINION**

Before the court is defendants' motion to dismiss plaintiff's complaint. For the reasons explained below, we grant the defendants' motion.

**BACKGROUND**

On December 18, 2006, plaintiff Bridgeview Bank Group loaned Mohammed Siddiqui $1,425,000 secured by a mortgage and an assignment of rents against the property located at 2140-50 West Devon, Chicago, Illinois (the "Devon Property"). (Compl. ¶¶ 1, 12.) Prior to loaning the money to Siddiqui, Bridgeview received a title commitment from defendant Stewart Title Guaranty Company ("Stewart Guaranty"). (Id. at ¶ 14.) The title commitment did not disclose preexisting mortgages on Devon Property held by Broadway Bank totaling several million dollars. (Id. at ¶ 15.) On the closing date, December 18, 2006, defendant Stewart Title Company of

Illinois ("Stewart Title") issued a First Lien Letter "assur[ing] [Bridgeview] that the mortgage described above from [Siddiqui to Bridgeview] shall be a first lien against the property described in the commitment for the title insurance." (Id. at ¶ 16; see also First Lien Letter, attached as Ex. C to Compl.) Bridgeview instructed Stewart Title, as the closer/escrow agent, to use the loan proceeds to "[s]atisfy all existing liens and encumbrances." (Compl. ¶ 15; see also Closing Instructions, attached as Ex. B to Compl.) Stewart Title did not use the loan proceeds to pay off Broadway Bank's mortgages, and instead disbursed the proceeds directly to Siddiqui. (Compl. ¶ 17.) On December 27, 2006, Stewart Guaranty issued to Bridgeview a $1,425,000 Title Policy insuring Bridgeview's first mortgage on the Devon Property. (Id. at ¶ 18.)

Siddiqui eventually defaulted on his loan, and in August 2008 Bridgeview declared the entire unpaid principal balance and all unpaid interest immediately due and payable. (Id. at ¶ 19.) Siddiqui was unable to pay the debt, prompting Bridgeview to seek foreclosure. (Id.) On December 29, 2008, in connection with its foreclosure action, Bridgeview obtained "minutes of foreclosure" disclosing Broadway Bank's mortgages and a pending mechanic's lien action filed by Pella Windows & Doors in the Circuit Court of Cook County. (Id. at ¶¶ 20-21.) Bridgeview obtained leave to intervene in that case and filed a counterclaim to foreclose its mortgage on

the Devon Property. (Id. at ¶¶ 21-22.) The court entered a foreclosure judgment in Bridgeview's favor on December 30, 2009. (Id. at ¶ 24.) Although the judgment states that Bridgeview's lien has priority over all other mortgages, Broadway Bank was evidently not a party to the lawsuit. (Id. at ¶ 25; see also Judgment of Foreclosure & Sale, attached as Ex. G to Compl., at § III(7).) At that time Bridgeview filed its complaint, Broadway Bank had contacted Bridgeview and asserted its priority but had not yet filed any lawsuit. (Compl. ¶ 27.) Bridgeview alleges that it "promptly notified" Stewart Guaranty of Broadway Bank's mortgages and made a claim under the Title Policy in the amount of $1,403,836.07 (the amount paid to Siddiqui at the December 2006 closing) plus interest. (Compl. ¶ 36.) This allegation is untethered to any fact that would indicate approximately when Bridgeview made its first demand. Bridgeview does allege, however, that it renewed its demand for $1,403,836.07 plus interest on October 26, 2010. (Id. at ¶ 37.) Bridgeview filed this lawsuit approximately three weeks later after Stewart Guaranty "refused to offer Bridgeview or Broadway Bank (n/k/a MB Financial Bank) any money to resolve this claim." (Id. at ¶ 37.) Bridgeview has asserted claims for breach of the Title Policy (Count I), breach of fiduciary duty (Count II), negligence (Count III), breach of the common law duty of good faith (Count IV), and vexatious and unreasonable conduct under 215 ILCS 5/155 (Count V). Bridgeview

has since voluntarily withdrawn its negligence claim. (See Pl.'s Resp. at 2 n.1.)

On December 10, 2010, after Bridgeview filed this lawsuit, Broadway Bank (n/k/a MB Financial Bank, N.A.) filed a foreclosure action in the Circuit Court of Cook County naming Bridgeview (among others) as defendants. (See Verified Compl. for Foreclosure of Mortgage and for Other Relief, attached as Ex. 1 to Pl.'s Resp.) Defendants state that they were unaware of MB Financial's lawsuit when they filed their motion to dismiss on January 21, 2011. (Defs.' Reply at 2.) They have attached to their reply a letter that they received from Bridgeview, dated January 26, 2011, requesting defense under the Title Policy. (Letter from L. Fontoura to Stewart Guaranty, dated Jan. 26, 2011, attached as Ex. 1 to Defs.' Reply.) On March 18, 2011, Stewart Guaranty sent a letter to Bridgeview's counsel notifying her that Stewart Guaranty had retained an attorney represent Bridgeview in MB Financial's foreclosure action. (Letter from L. Curry to L. Fontoura, dated Mar. 18, 2011, attached as Ex. 2 to Defs.' Reply.)

## DISCUSSION

### A.   Legal Standard

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 354 (3d ed. 2004). To survive

such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 556 (2007)). When evaluating a motion to dismiss a complaint, the court must accept as true all factual allegations in the complaint. Iqbal, 129 S. Ct. at 1949. However, we need not accept as true its legal conclusions; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

**B.    Breach of the Title Policy (Count I)**

Bridgeview contends that Stewart Guaranty has wrongfully refused to pay "losses" caused by the defendants' failure to disclose and satisfy MB Financial's preexisting mortgages. Section 4(b) of the Title Policy provides,

> The Company shall have the right, at its own costs, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured, or to prevent or reduce loss or damage to the insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this policy. If the Company shall exercise its rights under this paragraph, it shall do so diligently.

(Title Policy § 4(b).) Stewart Guaranty was not required to immediately pay Bridgeview $1.4 million upon learning of MB Financial's mortgages — it had the "right" under Section 4(b) to remove the alleged defect.[1] And it must be given adequate time to exercise its right. Elliott v. Chicago Title Ins. Co., 462 N.E.2d 640 (Ill. App. 1984) is instructive. In that case the insured sued her title insurer 39 days after first notifying it of her claimed loss. Id. at 643. The Elliot court concluded that her action was premature, observing that the title insurer had the right to clear title. Id. at 644. As Bridgeview points out, the policy language in Elliot prohibited the insured from pursuing a claim if the insurer removed the defect within a "reasonable time" after notice. Id. Section 4(b) does not explicitly give Stewart Guaranty a "reasonable time" to act, but that term is implicit. Otherwise, Stewart Guaranty's "right" would be meaningless. Atwood v. St. Paul Fire and Marine Ins. Co., 845 N.E.2d 68, 71 (Ill. App. 2006) ("[A] contract must not be interpreted in a manner that nullifies provisions of that contract."). We have no difficulty concluding that three weeks — the time between Bridgeview's "renewed" demand for $1.4 million and filing this lawsuit — is insufficient time to respond. But as we noted earlier, Bridgeview alleges that it first demanded payment some unspecified time before October 26, 2010. If

---

[1] A title insurance policy is not a promise that there will be no undisclosed title defects; it is a promise to indemnify the insured should such defects arise, subject to the title policy's terms. See First Midwest Bank, N.A. v. Stewart Title Guaranty Co., 843 N.E.2d 327, 335-36 (Ill. 2006).

Bridgeview made its initial claim months earlier, then our analysis might change. Section 4(b) expressly provides that Stewart Guaranty must act "diligently" only after it chooses to act. But its discretion in deciding whether to act is not unfettered. The implied duty of good faith and fair dealing requires Stewart Guaranty to exercise its discretion under the Title Policy "in a manner consistent with the reasonable expectations of the parties." Beraha v. Baxter Health Care Corp., 956 F.2d 1436, 1445 (7th Cir. 1992). At some point Stewart's Guaranty's inaction might violate section 4(b). See id.

However, in light of MB Financial's foreclosure action it would be futile to permit Bridgeview to amend its complaint to clarify when it first notified Stewart Guaranty. See United States v. Wood, 925 F.2d 1580, 1582 (7th Cir. 1991) (District courts may take judicial notice of matters of public record without converting a defendant's motion to dismiss into a motion for summary judgment). The Title Policy provides that "[i]n the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title or to the lien of the insured mortgage, as insured." (Title Policy ¶ 8(b) (emphasis added).) Under the Title Policy's express terms, Bridgeview is not entitled to the relief it

requests in Count I until a final determination adverse to Bridgeview. (Compl. ¶ 42 (Requesting "judgment against Stewart and in favor of Bridgeview in the amount of $1,403,836.07 plus interest from December 18, 2006.").) This is consistent with the general policy of Illinois courts to dismiss insurance indemnification claims while the underlying litigation is pending. See Medical Assur. Co., Inc. v. Hellman, 610 F.3d 371, 375 (7th Cir. 2010) (a duty-to-indemnify claim is unripe while the insured's ultimate liability is undetermined). Count I is dismissed as unripe.

## C.   Breach of Fiduciary Duty (Count II)

Bridgeview's complaint alleges that "[Stewart Guaranty], in its capacity as insurer to Bridgeview, owed Bridgeview the highest fiduciary duties as a matter of law." (Compl. ¶ 44; see also id. at ¶ 45 ("[Stewart Guaranty] owed fiduciary duties to Bridgeview, as Bridgeview's insurer pursuant to the Title Policy.").) On the contrary, "[i]n Illinois, 'it is well settled that no fiduciary relationship exists between an insurer and an insured as a matter of law.'" Lyerla v. AMCO Ins. Co., 536 F.3d 684, 694 (7th Cir. 2008) (quoting Martin v. State Farm Mut. Auto. Ins. Co., 808 N.E.2d 47, 51 (2004)). Bridgeview points out that Lyerla and Martin involve different facts, which is true, but they have not explained why the general principle does not apply in this case. Bridgeview also cites Beatty v. Doctors' Co., 871 N.E.2d 138, 145 (Ill. App. 2007) for the proposition that a fiduciary-duty arises once an insurance company's duty to defend has been triggered. According

to materials attached to the parties' briefs, Bridgeview has tendered its defense in the MB Financial foreclosure action and Stewart Guaranty has accepted. But whether nor not Stewart Guaranty is currently fulfilling its defense obligations, Bridgeview's breach-of-fiduciary duty claim is predicated on events occurring years before MB Financial's lawsuit.

Bridgeview also argues that Count II should be construed as a claim against Stewart Guaranty <u>as escrowee</u>. (Compl. ¶ 7.) An escrowee owes a fiduciary duty to the escrow depositor and beneficiary, and must "act only in accordance with the escrow instructions." <u>See</u> <u>International Capital Corp. v. Moyer</u>, 806 N.E.2d 1166, 1172 (Ill. App. 2004). Bridgeview instructed Stewart Guaranty to "[s]atisfy all existing liens and encumbrances," but Stewart Guaranty did not satisfy the MB Financial mortgages. (<u>See</u> Closing Instructions at 2; Compl. ¶ 46.) However, Bridgeview has not cited any authorities that would support imposing a duty on the escrowee to independently investigate title. As defendants point out, that would be an extraordinary undertaking, tantamount to a second layer of title insurance. We conclude that Bridgeview's remedy, if it has one, is under the Title Policy.

**D.   Common Law Duty of Good Faith (Count IV)**

Bridgeview alleges that Stewart Guaranty has "breached its duty of good faith to Bridgeview by refusing to settle Bridgeview's claims under the Title Policy." (Compl. ¶ 64.) Defendants argue that this claim is preempted by Illinois Insurance Code § 155,

which provides an extracontractual remedy for an insurer's "vexatious and unreasonable" conduct. 215 ILCS 5/155. The Illinois Supreme Court has held that "Section 555 does not preempt a claim of insurer misconduct based on a separate and independent tort," such as fraud. Cramer v. Ins. Exchange Agency, 675 N.E.2d 897, 904, 905-06 (Ill. 1996). At the same time, the court declined to recognize a tort of bad faith, which "would encourage plaintiffs to sue in tort, and not breach of contract, to avoid suit limitation clauses and the cap on the statutory remedy [i.e., Illinois Insurance Code § 155]." Id. at 904. Bridgeview argues that it has properly asserted an "independent" tort: breach of Stewart Guaranty's "duty to settle." (Pl.'s Mem. at 9-10.) An insurer "has a duty to act in good faith in responding to settlement offers. When an insurer breaches this duty by refusing to settle, the insurer may be liable for the full amount of a judgment against the policyholder, regardless of the policy limits." Cramer, 675 N.E.2d at 525. As far as the complaint reveals, the defendants have not rejected any third-party settlement offers. This is a "first-party" claim by an insured against its insurer. Id. Bridgeview's remedy is to "sue for the proceeds due under the policy," subject to the policy's terms. Id. Count IV is dismissed.

**E.    Illinois Insurance Code § 155 (Count V)**

As we previously discussed, three weeks is not an "unreasonable" amount of time for Stewart Guaranty to weigh its options under the Title Policy. See Scottsdale Ins. Co. v. City of Waukegan, No. 07 C 64, 2007 WL 2740521, *2 (N.D. Ill. Sep. 10, 2007) (dismissing plaintiff's § 155 claim and noting that "[t]here is nothing inherently vexatious or unreasonable about the twelve-day time period between notice to Scottsdale and Scottsdale's reservation of rights letter or a three-month time period between Waukegan's notice to Scottsdale and Scottsdale's declaratory judgment action."). The delay may have been longer, but it would be futile to permit Bridgeview to amend its complaint to clarify when it first asserted its claim while Stewart Guaranty's ultimate liability is unresolved. Before awarding attorneys fees under § 155 we must consider the "totality of the circumstances." Matsushita Elec. Corp. of America v. Home Indem. Co., 907 F.Supp. 1193, 1201 (N.D. Ill. 1995). Stewart Guaranty's conduct of Bridgeview's defense in that litigation would certainly be relevant when evaluating the "totality of the circumstances" surrounding its handling of Bridgeview's claim. We note, in this connection, that if Stewart Guaranty later pays Bridgeview's claim that would not necessarily foreclose a claim under § 155 for unreasonable delay. See Calcagno v. Personalcare Health Management, Inc., 565 N.E.2d 1330, 1337-39 (Ill. App. 1991).

## CONCLUSION

Defendants' motion to dismiss (14) is granted.  Counts I and V are dismissed as unripe, without prejudice to the plaintiff refiling those claims at a later date.  Counts II and IV are dismissed with prejudice.


DATE:      July 21, 2011

ENTER:     _____

           John F. Grady, United States District Judge